UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SHELL OFFSHORE, INC. | CIVIL ACTION |
| VERSUS | NO: 17-9695 |
| FREEPORT-MCMORAN OIL & GAS, LLC | SECTION: "A" (5) |

## ORDER AND REASONS

The following motion is before the Court: **Motion to Dismiss for Lack of Personal Jurisdiction (Rec. Doc. 62)** filed by defendant, PXP Gulf Coast LLC. Plaintiff, Shell Offshore, Inc., opposes the motion. The motion, noticed for submission on May 16, 2018, is before the court on the briefs without oral argument.

### I. BACKGROUND

Shell Offshore, Inc. filed this action to recover plugging, abandonment, and decommissioning costs that it incurred for certain facilities located on Eugene Island Block 30 ("EI30"), which is located on the OCS near Louisiana.

In 1988, Shell leased EI30 from the federal government for oil and gas activities. Effective January 1, 1992, via a Purchase and Sale Agreement ("PSA"), Shell transferred all of its right, title, and interest in the EI30 lease to Pel-Tex Oil Co. (Rec. Doc. 43-1, Amended Comp. Exh. A). According to Shell, under Paragraph 8 of the PSA, Pel-Tex assumed all of Shell's EI30 liabilities and agreed to indemnify Shell for certain "claims" associated with the EI30 lease. (Rec. Doc. 43, Amended Comp. ¶ 14).

On July 17, 2013, Shell received a letter from the federal Bureau of Safety and Environmental Enforcement notifying Shell, as a former lessee of EI30, that it was

responsible for plugging, abandoning, or decommissioning all wells, pipelines, platforms, and other facilities in EI30 for which it had accrued decommissioning costs.[1] Under federal law, a former OCS lessee remains liable to the federal government for decommissioning obligations despite the transfer of its legal interest in the lease. Shell incurred approximately $6.35 million to carry out the required work.

Pel-Tex Oil, the original party to the PSA with Shell, no longer exists. Shell contends that defendant and movant PXP Gulf Coast, LLC is the successor in interest to Pel-Tex Oil's contractual indemnity obligations to Shell stemming from the PSA. The alleged succession history of Pel-Tex's contractual obligations is outlined in detail in Shell's amended complaint. (Rec. Doc. 43, Amended Comp. ¶¶ 18-25). Shell provided the following demonstrative depiction of the succession in its complaint:[2]



(*Id.* ¶ 26).

Defendant Freeport-McMoRan Oil & Gas, LLC ("FMOG") is PXP's sole member; PXP is a wholly-owned subsidiary of FMOG.

In 2014, Shell made a formal demand on FMOG for indemnity for the EI30 decommissioning costs. According to Shell, it engaged in extensive negotiations with FMOG regarding the decommissioning costs for EI30 and during those negotiations FMOG never suggested that Shell was dealing with the wrong entity. When negotiations

---

[1] The letter stated that EI30's current lessee, an entity called ATP Oil & Gas Corp., had been relieved of its obligations by a United States Bankruptcy Court in Texas. (Rec. Doc. 43-12, at 5).

[2] PXP disputes the depiction, both in terms of its accuracy and simplicity. (Rec. Doc. 70-1, Reply at 5).

broke down, Shell initially filed this lawsuit against FMOG alone based the parties' prior dealings. After FMOG moved to dismiss the complaint, Shell amended its complaint to join PXP as a defendant. Shell alleges that PXP and/or FMOG breached the PSA by refusing to pay for the EI30 decommissioning costs.

PXP now moves to dismiss the complaint arguing that it is not subject to specific personal jurisdiction in a Louisiana court.

## II. DISCUSSION

### *Governing Law*

A non-resident defendant may move to dismiss for lack of personal jurisdiction. If the court rules on personal jurisdiction without conducting an evidentiary hearing, the plaintiff bears the burden of establishing only a prima facie case of personal jurisdiction. *Sangha v. Navig8 ShipMan. Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018 (citing *Quick Techs, Inc. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002)). Personal jurisdiction exists if the forum state's long-arm statute extends to the defendant and the exercise of such jurisdiction is consistent with due process. *Id.* (citing *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)). Because the limits of the Louisiana long-arm statute and the limits of constitutional due process are coextensive, the sole inquiry into personal jurisdiction is whether the exercise of jurisdiction comports with federal due process standards. *In re Chinese-Manuf. Drywall Prods. Liab. Litig.*, 753 F.3d 521, 547 (5th Cir. 2014) (quoting *Petro. Helicop., Inc. v. Acvo Corp.*, 513 So. 2d 1188, 1192 (La. 1987)); La. R.S. § 13:3201(B). To comport with due process, the nonresident defendant generally must have "certain minimum contacts . . . such that the maintenance of suit does not offend traditional notions of fair play and substantial

justice." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945)).

The issue in this case is whether PXP has the minimum contacts (with Louisiana) necessary to create specific personal jurisdiction.[3]

Specific jurisdiction may exist "over a nonresident defendant whose contacts with the forum state are singular or sporadic only *if* the cause of action asserted arises out of or is related to those contacts." *Sangha*, 882 F.3d at 101 (quoting *Int'l Energy Ventures Mgmt., LLC v. United Ener. Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016)). In other words, such jurisdiction exists "when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from injuries that arise out of or relate to those activities." *Id.* (quoting *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008)). "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (quoting *Goodyear Dunlop Tires Oper., S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Walden*, 134 S. Ct. at 1121 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). For a state to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum state. *Id.* As the Supreme Court explained in *Walden*, the relationship must arise out of contacts that the defendant himself creates with the forum state. *Id.* at 1122

---

[3] General personal jurisdiction is not at issue in this case. PXP Gulf Coast, LLC is a Delaware limited liability company with its principal place of business in Texas. (Rec. Doc. 62 at 1).

(citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). And the analysis turns on the defendant's contacts with the forum state itself, not the defendant's contacts with persons who happen to reside there. *Id.* (citing *Int'l Shoe*, 326 U.S. at 319).

### *Analysis*

Shell contends that it has made at least two independent prima facie showings of specific personal jurisdiction with respect to PXP, neither of which involve PXP's own contacts with this state.

First, Shell relies on the concept of "successor jurisdiction." Shell contends that its well-pleaded factual allegations show an unbroken chain of three mergers between Pel-Tex and PXP and that each involved the successor corporation assuming the liabilities of its predecessor. According to Shell, under well-established precedent, PXP is subject to personal jurisdiction where Pel-Tex would have been subject to personal jurisdiction for breaching the EI30 decommissioning obligations under the PSA.

Second, Shell contends that FMOG's Louisiana contacts related to this dispute may be imputed to PXP under an alter ego or agency theory. Shell contends that FMOG and PXP are legally the same entity.

### A. Successor Jurisdiction

The Fifth Circuit has recognized that it may be compatible with due process for a court to exercise personal jurisdiction over a corporation that would not ordinarily be subject to personal jurisdiction in the forum when the corporation is the successor of a corporation that would have been subject to personal jurisdiction in the forum. *Patin v. Thoroughbred Power Boats, Inc.*, 294 F. 3d 640, 653 (5th Cir. 2002) (citing *Minn. Mining*

*& Manuf. Co. v. Eco Chem., Inc.*, 757 F.2d 1256, 1265 (Fed. Cir. 1985)). The theory underlying the cases supporting corporate "successor jurisdiction" is that because the two corporations are "the *same entity*, the jurisdictional contacts of one *are* the jurisdictional contacts of the other for the purposes of the *International Shoe* due process analysis." *Id.* (emphasis in original).

The first question to be considered is whether Pel-Tex Oil itself would have been subject to specific personal jurisdiction in Louisiana if Shell had sued Pel-Tex for the breaches of the PSA alleged in this case. According to the PSA, Pel-Tex was a Delaware corporation and its business address was located in Houston, Texas. (Rec. Doc. 43-1, PSA at 1). Shell was located in New Orleans, Louisiana but merely contracting with a resident of the forum state is insufficient to subject a nonresident to the forum's jurisdiction. *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986); *Trois v. Apple Tree Auction Ctr, Inc.*, 882 F.3d 485, 489 (5th Cir. 2018) (2018) (citing *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009)). Likewise, the exchange of communications between Texas and Louisiana relating to the contract or the mailing of notices and payments to Louisiana pursuant to the contract would be insufficient to establish specific jurisdiction if the material performance of the PSA occurred outside of this state. *See id.*

The material performance of the PSA was for Shell to sell and for Pel-Tex to purchase all of Shell's interest in the EI30 lease, which involves federal land located not in Louisiana but on the OCS. Shell's basis for tying the performance of the PSA to Louisiana is that Louisiana is the state located nearest to EI30, and according to Shell, there is simply no basis in law for distinguishing between federal and state land. Shell

points out that the OCSLA provides that Louisiana law applies to the "subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon." 43 U.S.C. § 1333(a)(2)(A).

The Court assumes without deciding that Pel-Tex Oil would be subject to specific personal jurisdiction in this forum if the PSA had transferred title to land that was actually located within Louisiana's borders. But EI30 is not physically located within this state and the OCSLA's "gap-filler" provision does not place it here for purposes of this breach of contract case.[4] Moreover, the OCSLA provides that

> The provisions of this section for adoption of State law as the law of the United States ***shall never be interpreted as a basis for claiming any interest in or jurisdiction on behalf of any State for any purpose*** over the seabed and subsoil of the outer Continental Shelf, or the property and natural resources thereof or the revenues therefrom.

43 U.S.C. § 1333(a)(3) (emphasis added).

Shell's cited district court cases like *Hughes v. Lister Diesels, Inc.*, 642 F. Supp. 233, 235 (E.D. La. 1986), which involved injury actually sustained on the OCS, do not suggest that the federal property in this case is deemed to be state property for purposes of a purchase agreement. Simply, the PSA did not involve the transfer of property located within this state.

Shell suggests that the PSA contemplated the future performance of acts in Louisiana such as requiring Shell and Pel-Tex to execute a contract covering the sale and purchase of condensate produced from EI30, sending notices to Shell in Louisiana, and sending the executed bill of sale to Shell in New Orleans. (Rec. Doc. 67, Opposition

---

[4] The OCSLA extends federal law to the OCS and borrows adjacent state law as a "gap-filler." *Texaco Explor. & Prod., Inc. v. AmClyde Eng'r Prods. Co.*, 448 F.3d 760, 773 (5th Cir. 2006) (citing 43 U.S.C. § 1333).

at 7 n.2). Assuming that these future obligations actually occurred, they are not sufficient to transform the PSA into a contract whose material performance occurred in this state. Moreover, the claims in this lawsuit do not arise out of any of those alleged future contacts.

In sum, other than contracting with a Louisiana resident and sending notices/payments to Shell in this state—none of which suffices to establish minimum contacts—Shell has identified no other activities related to this dispute that Pel-Tex Oil purposefully directed toward Louisiana. Pel-Tex, which apparently had no connection to Louisiana, merely contracted with a company that itself had ties to Louisiana. Thus, even if "successor jurisdiction" applied to impute Pel-Tex's Louisiana contacts to PXP, specific personal jurisdiction would not exist. Shell has failed to establish a prima facie case of specific personal jurisdiction under its first theory.

### B. FMOG's Louisiana Contacts

At the outset, the Court notes that Shell cannot establish a prima facie case of specific personal jurisdiction against FMOG based on its suit-related Louisiana contacts. The Louisiana contacts that Shell points to are as follows: FMOG corresponded with Shell on at least two occasions regarding the EI30 decommissioning obligations, and that FMOG did so from its offices in Lafayette; representatives of Shell and FMOG met in New Orleans to discuss decommissioning the EI30 facilities. (Rec. Doc. 67, Opposition at 12). While all of these contacts are certainly related to this lawsuit, the dispute in this case does not arise out of any of these contacts. Thus, imputation of these Louisiana contacts is a moot point.

Shell also argues that because FMOG has submitted to the jurisdiction of this Court, PXP—which is allegedly operated as a single business enterprise with FMOG—should also be subject to the jurisdiction of this Court.[5] If PXP was the alter ego of FMOG, then PXP can be bound by FMOG's voluntary submission to the personal jurisdiction of this Court. *See Patin*, 294 F.3d at 654. Numerous factors are considered when determining whether the parent/subsidiary relationship should be elided to conclude that one is the alter ego of the other. *United States v. Jon-T Chem.*, Inc., 768 F.2d 686, 691-92 (5th Cir. 1985). These factors include common stock ownership, common corporate directors/officers, common business departments, finances, undercapitalization, use of property, comingling operations, etc. *Id.*

Shell points out that FMOG is the sole member and 100 percent owner of PXP; that as PXP's sole member FMOG has actual working control of PXP; that the entities have identical ownership; that they share officers and employees; and they share the same corporate mailing address in Houston, Texas. PXP correctly points out that a legitimate parent/subsidiary relationship can exist in this manner without one being the alter ego of the other. Shell nonetheless points to the manner in which FMOG initially negotiated with Shell after Shell demanded that FMOG pay the EI30 decommissioning costs. To Shell, it was as if FMOG was acting on behalf of PXP, the entity that FMOG later claimed would be the appropriate defendant. Shell has conducted multiple nationwide searches but has found no assets owned or controlled by PXP. (Rec. Doc. 43, Amend. Comp. ¶ 42).

---

[5] Shell does not suggest that FMOG is subject to general personal jurisdiction in Louisiana, which should then be imputed to PXP as its alter ego, but rather relies upon the fact that FMOG has voluntarily submitted to the jurisdiction of this Court. (Rec. Doc. 67, Opposition at 14).

A party seeking to overcome the presumption of corporate separateness must do so by "clear evidence," *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999) (citing *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 465 (1st Cir. 1990)), and PXP contends that Shell has not done so. Shell has requested leave, however, to conduct jurisdictional discovery in an effort to establish its alter ego theory of imputation. The Court is persuaded that Shell has made enough of a preliminary showing to have its request granted. If Shell can obtain evidence through discovery to enable it to establish personal jurisdiction based on its alter ego theory, the Court is persuaded that exercising jurisdiction over PXP would not offend traditional notions of fair play and substantial justice.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Dismiss for Lack of Personal Jurisdiction (Rec. Doc. 62)** filed by defendant, PXP Gulf Coast LLC is **DENIED** without prejudice to PXP's right to re-move for dismissal based on personal jurisdiction once jurisdictional discovery is complete. Absent agreement by the parties to the contrary, jurisdictional discovery must be completed by **August 10, 2018**. Within thirty (30) days of completion of jurisdictional discovery, PXP must either file and notice for submission a new motion to dismiss or answer the complaint.

June 13, 2018

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE