# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SHELL OFFSHORE INC.,<br><br>Plaintiff,<br><br>v.<br><br><br>FREEPORT-MCMORAN OIL & GAS LLC,<br><br>Defendant. | CASE NO. 2:17-cv-09695<br><br><br>DISTRICT JUDGE BARRY W. ASHE<br><br><br>MAGISTRATE JUDGE MICHAEL B. NORTH |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL JURISDICTIONAL DISCOVERY RESPONSES AND PRODUCTION OF DOCUMENTS

Defendants, Freeport-McMoRan Oil & Gas LLC ("FMOG") and PXP Gulf Coast LLC ("PXP Gulf Coast"), with full reservation of all substantive and procedural rights, respectfully submit this Response in Opposition to the Motion to Compel Jurisdictional Discovery Responses and Production of Documents (Rec. Doc. 88) filed by Plaintiff, Shell Offshore Inc. ("Shell").  This Court should deny Shell's Motion to Compel because FMOG and PXP Gulf Coast have fully and properly responded to Shell's discovery requests within the scope of the narrow jurisdictional discovery authorized by the Court in its Order and Reasons dated June 13, 2018.  Rec. Doc. 76. Under the Order, the Court authorized Shell to conduct jurisdictional discovery limited only to "an effort" by Shell "to establish its alter ego theory of imputation," *id.* at 10, pursuant to which Shell seeks to establish that personal jurisdiction exists over PXP Gulf Coast by imputation to it of FMOG's voluntary submission to the forum's jurisdiction.

{N3660866.2}

The Fifth Circuit has delineated a "distinct" seven-factor test[1] that applies to determine "when one corporation's contacts with the forum can be attributed to a related corporation," which this Court "is bound to apply." *Melson v. Vista World Inc. & Assocs.*, Civil Action No. 12-135, 2012 WL 6002680, 2012 U.S. Dist. LEXIS 170414, at *12 (Nov. 30, 2012) (citing *Adm'rs of Tulane Educ. Fund v. Ipsen, S.A.*, 450 F. App'x 326, 330 n.5 (5th Cir. 2011)).  As a result, Shell's discovery must be limited to those seven factors only, and discovery requests related to any other factors – like the 18 factors used in the *Green* single business enterprise test[2] or other miscellaneous traditional veil-piercing factors that may apply at the merits stage on liability – have no relevance at this point in the litigation and are improper.  Because the discovery that Shell seeks to compel falls outside the Fifth Circuit's distinct seven-factor test, the Court should deny Shell's Motion to Compel.

## Background and Procedural History

### I.     Shell's Complaint and First Amended Complaint.

Shell originally filed this action solely against FMOG in an effort to recover decommissioning costs it incurred when the federal government through its Bureau of Safety and Environmental Enforcement ordered Shell, as a former lessee of an Outer Continental Shelf ("OCS") lease covering Eugene Island Block 30 ("EI30"), to decommission the wells and facilities

---

[1] The Fifth Circuit originally set forth the seven-factor test for imputation of jurisdictional contacts under an alter ego theory in *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159-61 (5th Cir. 1983).  Subsequently, in *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 339 (5th Cir. 1999), the Fifth Circuit listed the "*Hargrave* factors" as a discrete seven-factor test and adopted the test as federal common law.

[2] *See Green v. Champion Ins. Co.*, 577 So.2d 249, 257-58 (La. App. 1st Cir. 1991).

at EI30 due to the bankruptcy of the then-current lessee, ATP.  Rec. Doc. 1.  Shell, the original

lessee and 100% interest owner, entered into the EI30 lease with the United States of America on

June 1, 1988.  Under a Purchase and Sale Agreement ("PSA"), dated effective January 1, 1992,

Shell transferred and sold all right, title and interest in the EI30 lease to Pel-Tex Oil Company

("Pel-Tex").  Rec. Doc. 43 at ¶ 13.  Shell asserts that Pel-Tex contractually agreed to assume

liability and indemnify Shell for EI30 decommissioning costs under the provisions of the PSA.  *Id.*

at ¶ 13-15.

Although neither FMOG nor PXP Gulf Coast ever held any interest in the EI30 lease, Shell

has sued them to recover the decommissioning costs that the federal government ordered it to pay

because Shell could not sue its successor lessee, Pel-Tex, as Pel-Tex ceased to exist in 1999.  *Id.*

at ¶ 18.  Without any means of recourse against Pel-Tex, Shell sought to trace the alleged

succession history of Pel-Tex's contractual obligations.[3]  Although the succession trail ended 17

years before Shell filed this suit with the dissolution under Delaware law of an entity named

Magellan,[4] Shell nevertheless asserted that, "upon information and belief," the liability for Pel-

Tex's contractual obligations survived Magellan's dissolution and passed to PXP Gulf Coast upon

---

[3] According to Shell, on March 5, 1999, Pel-Tex merged into Magellan Exploration, LLC ("Magellan"), with Magellan as survivor.  Rec. Doc. 43 at ¶ 18.  Then, on February 2, 2000, Magellan merged with 3TM Acquisition LLC ("3TM"), a subsidiary of 3TEC Energy Corporation ("3TEC"), with Magellan as the surviving entity.  *Id.* at ¶ 19.

[4] As set forth in Shell's First Amended Complaint, Magellan filed its Certificate of Cancellation on September 26, 2000, and dissolved effective September 30, 2000.  Rec. Doc. 43 at ¶ 20.  According to Shell, almost three years after Magellan's dissolution, on June 4, 2003, 3TEC merged with PXP Gulf Coast, with PXP Gulf Coast as the surviving entity.  *Id.* at 21.  Thus, while Shell acknowledges Magellan's prior dissolution (and accordingly that Magellan did not become a subsidiary of PXP Gulf Coast), it asserts that the contractual duties owed by Pel-Tex were transferred to PXP Gulf Coast.  *Id.*  at ¶ 26.

the merger of 3TEC into PXP Gulf Coast on June 4, 2003.[5]  At that time, PXP Gulf Coast was a Delaware corporation and a wholly-owned subsidiary of Plains Exploration & Production Company.[6]  Through a conversion and a subsequent transaction that took place on May 31, 2013 – almost ten years after the merger between 3TEC and PXP Gulf Coast – PXP Gulf Coast is now a Delaware limited liability company for which FMOG is the current sole member.[7]

Because Shell originally sued FMOG for debts it alleged rested with an entity with separate and distinct legal existence, PXP Gulf Coast, FMOG responded with a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), asserting that Shell failed to allege any facts that would support disregarding PXP Gulf Coast's separate legal existence such that liability could be imposed on FMOG.[8]  Shell then sought to correct its "wrong party" error through an amendment to add PXP Gulf Coast to the suit.[9]  Shell, however, also asked the Court to allow it to keep FMOG in the suit as well by amending its Complaint to assert alter ego allegations.  Despite FMOG's objection to

---

[5] Rec. Doc. 43 at ¶¶ 20-21.  As they have from the outset, *see, e.g.,* Rec. Doc. 1-17, and throughout these proceedings, *see, e.g.*, Rec. Doc. 13-1 at p. 3 n. 11, FMOG and PXP Gulf Coast dispute and deny that Magellan's sole member, 3TEC, assumed Magellan's contractual obligations under the PSA upon or prior to Magellan's dissolution.

[6] *Id.* at ¶ 21.

[7] *Id.* at ¶¶ 22-23.  FMOG was originally formed on December 3, 2012, under the name of IMONC LLC, and changed its name to FMOG on May 2, 2013.  *Id.* at ¶ 24.  PXP Gulf Coast did not become a subsidiary of FMOG until Plains Exploration & Production Company merged with FMOG on May 31, 2013.  Accordingly, the earliest possible time that PXP Gulf Coast could be deemed to be the alleged alter ego of FMOG is the time when PXP Gulf Coast first became a subsidiary of FMOG on May 31, 2013.

[8] Rec. Doc. 13.

[9] Rec. Docs. 23 & 23-1.

the alter ego amendments as futile, the Court granted Shell leave to amend its Complaint, thus maintaining FMOG in the suit and adding PXP Gulf Coast as a party to it.

**II.     PXP Gulf Coast's Motion to Dismiss for Lack of Personal Jurisdiction, Shell's Failure to Meet Its *Prima Facie* Burden and the Court's Authorization of Limited Jurisdictional Discovery Related Exclusively to Shell's "Alter Ego Theory of Imputation."**

Upon its deadline to file responsive pleadings, PXP Gulf Coast, a Delaware limited liability company with its principal place of business in Texas, filed a Motion to Dismiss for Lack of Personal Jurisdiction under Fed. R. Civ. P. 12(b)(2), asserting that it lacked sufficient minimum contacts with the Louisiana forum under the tests for either general or specific personal jurisdiction.  Rec. Doc. 62.  Shell opposed PXP Gulf Coast's motion by relying only on the purported existence of specific jurisdiction over it.  Rec. Doc. 67.  Shell, however, did not point to any activities by PXP Gulf Coast directed to the forum related to this dispute.  Rather, it asked the Court to impute alleged forum contacts of others to PXP Gulf Coast.  First, Shell asked the Court to impute Pel-Tex's alleged forum contacts arising from the PSA between Pel-Tex and Shell to PXP Gulf Coast as the alleged "successor-in-interest" to the contractual obligations set forth in the PSA. *Id.* at 5-8.  Second, Shell asked the Court to impute FMOG's forum contacts to PXP Gulf Coast under an agency theory or an alter ego theory.  *Id.* at 11.  To support is agency theory of imputation, Shell pointed to contacts that it had with FMOG in the forum in response to pre-suit demands that Shell had directed to FMOG.  To support its alter ego theory of imputation, Shell relied on the alter ego allegations asserted in its First Amended Complaint.  Although Shell asserted in its opposition that it had met its *prima facie* burden to show the existence of personal jurisdiction over PXP Gulf Coast, Shell alternatively requested leave to conduct jurisdictional discovery related to:  (a) the succession history of Pel-Tex; (b) its alter ego allegations with respect

{N3660866.2}

to FMOG and PXP Gulf Coast; (c) FMOG's forum contacts; and (d) PXP Gulf Coast's forum contacts. *Id.* at 18.

In the Court's Order and Reasons, the Court addressed each of Shell's imputation theories, first rejecting Shell's theory that "successor" personal jurisdiction existed over PXP Gulf Coast by virtue of imputation of Pel-Tex's forum contacts to PXP Gulf Coast. Rec. Doc. 76 at 8. Second, the Court rejected Shell's assertion that personal jurisdiction existed over PXP Gulf Coast due to FMOG's forum-related contacts under an agency imputation theory. Specifically, with respect to Shell's contention that FMOG's forum contacts in response to Shell's pre-suit demands should be imputed to PXP Gulf Coast, the Court concluded that Shell "cannot establish a prima facie case of specific personal jurisdiction against FMOG based on its suit-related Louisiana contacts" because "the dispute in this case" did "not arise out of any of these contacts." *Id.* Accordingly, the Court rejected Shell's agency theory of imputation, finding that "imputation of these Louisiana contacts is a moot point." *Id.*

Finally, in its Order and Reasons, the Court addressed Shell's alter ego theory of imputation under which Shell asserted that FMOG's submission to the jurisdiction of the forum should be imputed to PXP Gulf Coast as PXP Gulf Coast is the alleged alter ego of FMOG. Although the Court concluded that Shell had failed to sustain its burden "to overcome the presumption of corporate separateness" by the requisite "clear evidence,"[10] it found that Shell had "made enough of a preliminary showing" to have its request for leave to conduct jurisdictional discovery granted. Rec. Doc. 76 at 10. As set forth by the Court, it granted Shell leave to conduct jurisdictional

---

[10] Rec. Doc. 76 at 10 (quoting *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999) (citing *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 465 (1st Cir. 1999)).

discovery limited only to "an effort" by Shell "to establish its alter ego theory of imputation." *Id.* Accordingly, the Court authorized narrow jurisdictional discovery limited only to seeking information relevant to whether PXP Gulf Coast is "the alter ego of FMOG." *Id.* at 9.

**III.    Shell's Discovery Requests and FMOG's and PXP Gulf Coast's Responses.**

After the Court granted it leave to conduct narrow jurisdictional discovery, Shell served hundreds of written discovery requests on both FMOG and PXP Gulf Coast.[11]  FMOG and PXP Gulf Coast timely and fully responded to Shell's written discovery requests answering each of the 249 Requests for Admission, producing documents and objecting to, as appropriate, each of the 66 Requests for Production and answering and objecting to, as appropriate, each of the 12 Interrogatories.  Shell further requested to take two corporate representative depositions, in response to which FMOG and PXP Gulf Coast each provided available dates on which they would make their representatives available for that purpose.

Among the documents produced by FMOG and PXP Gulf Coast (a number of which are marked as "Confidential" as they fall under the terms of the parties' agreed Protective Order),[12] each produced their separate tax returns with accompanying schedules for the period of 2013 to 2016, showing their separate tax identification numbers and each entity's separate financial information, each produced a separate corporate activity statement for the requested period of December 2012 to the present, each produced their separate formation documents and governing

---

[11] *See* Rec. Doc. 88-3 (Shell's written discovery requests to FMOG and PXP Gulf Coast, which consisted of 125 Requests for Admission, 33 Requests for Production and 6 Interrogatories to FMOG and 124 Requests for Admission, 33 Requests for Production and 6 Interrogatories to PXP Gulf Coast).

[12] *See* Rec. Doc. 85.

{N3660866.2}

agreements, each produced their separate minute books and each produced documents identifying their owners, officers, members and subsidiaries and affiliates, among other materials.  FMOG and PXP Gulf therefore responded to Shell's 327 written discovery requests with detailed information reflecting their maintenance of separate financial books and records and their observance of corporate formalities.

Although FMOG and PXP Gulf Coast provided full responses and limited their objections only to requests by Shell that sought information beyond the confines of the Fifth Circuit's seven-factor *Hargrave* test, Shell asserted that their responses were deficient and now moves to compel FMOG and PXP Gulf Coast to provide expansive additional information that lacks any relevance whatsoever to the narrow personal jurisdiction inquiry before the Court.

**Law and Argument**

## I.      Applicable Standards that Limit the Scope of Jurisdictional Discovery.

"Rule 26(b) commands that all discovery be both relevant and proportional."[13]  *In re: Xarelto (Rivaroban) Prods. Liab. Litig.*, 313 F.R.D. 32, 36 (E.D. La. 2016).  In the context of jurisdictional discovery, courts evaluate "the scope of and limitations on discovery imposed by Fed. R. Civ. P. 26(b)(1) and (2)," including Fed. R. Civ. P. 26(b)(2)(C)(i)'s limitation precluding "unreasonably cumulative or duplicative" discovery, as well as the scope of and limitations on the discovery imposed by the Order authorizing it.  *Stewart v. Marathon Petroleum Co., LP*, Civil Action No. 17-7775, 2018 WL 560469, 2018 U.S. Dist. LEXIS 11878, at *3, 11-12 (E.D. La. Jan.

---

[13] To determine proportionality, courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

24, 2018); *see also 721 Bourbon, Inc. v. House of Auth, LLC*, 140 F. Supp. 3d 586 (E.D. La. 2015). Here, the information that Shell seeks to compel from FMOG and PXP Gulf Coast goes well beyond the proper scope of the discovery authorized by the Federal Rules of Civil Procedure and the Court's Order.

## II.     The Information and Documents that Shell Seeks to Compel Fall Outside the Alter Ego Test Applied for Purposes of Establishing Personal Jurisdiction.

Shell's alter ego imputation theory depends solely on whether Shell can establish by "clear evidence"[14] that FMOG's voluntary submission to the forum's jurisdiction can be properly imputed to PXP Gulf Coast.  As set forth above, in federal question jurisdiction cases, like this one,[15] the seven factors set forth by the Fifth Circuit in *Hargrave* apply for purposes of determining the existence of personal jurisdiction.  *See Melson*, 12-135, 2012 WL 6002680, 2012 U.S. Dist. Lexis 170414, at *11-12.[16]

---

[14] *See* Rec. Doc. 76 at 10 ("A party seeking to overcome the presumption of corporate separateness must do so by 'clear evidence.'") (citations omitted).

[15] As asserted by Shell in its Amended Complaint, federal question jurisdiction exists over this action under the Outer Continental Shelf Lands Act, 43 U.S.C. 1331 *et seq.*  Rec. Doc. 43 at ¶ 9.

[16] In *Melson*, which was a federal question jurisdiction case, the court addressed imputation of one entity's forum contacts to another for purposes of personal jurisdiction and specifically rejected the applicability of the eighteen-factor "single business enterprise" test set forth by the Louisiana First Circuit court of appeal in *Green*, 577 So.2d 249.  *Id.* at *10-12.  Although *Melson* examined only whether the *Green* factors applied for purposes of determining personal jurisdiction in a case founded on federal question jurisdiction, FMOG and PXP Gulf Coast note here that the eighteen-factor single business enterprise test set forth in *Green* has no applicability in any context to determine allegations of alter ego status with respect to them.  Specifically, they point out that the single business enterprise theory cannot apply to them in any context because Louisiana law, La. Stat. Ann. § 12:1342, mandates that, as they are both Delaware limited liability companies, Delaware law "shall govern" their organization, internal affairs and the liability of their members in their capacity as members.

Under the *Hargrave* test, Shell's entitlement to jurisdictional discovery is limited only to requests for information with respect to the following seven factors:[17]  (1) the amount of stock or ownership interest held by the entity without presence in the forum in the entity with presence in the forum; (2) the location of the headquarters of the parent and subsidiary; (3) whether they have common officers and directors; (4) whether they observe corporate formalities; (5) whether they maintain separate accounting systems; (6) whether the entity that lacks presence in the forum exercises complete authority over general policy with respect to the entity with presence in the forum; and (7) whether the entity with presence in the forum exercises complete authority over its own daily operations.  *See Dickson*, 179 F.3d at 339; *see also Melson*, at *13-14 (citing *Adm'rs of Tulane Educ. Fund v. Biomeasure, Inc.*, 687 F. Supp. 2d 620, 624 (E.D. La. 2009)).

Moreover, as Judge Zainey recognized in his ruling on PXP Gulf Coast's Motion to Dismiss, "a legitimate parent/subsidiary relationship can exist" – despite the holding of a 100% ownership interest, control and shared offices, officers and employees – "without one being the alter ego of the other."  Rec. Doc. 76 at 9; *see also Dickson*, at 339 ("the mere fact that a corporate relationship exists is not sufficient to warrant the assertion of jurisdiction over a related corporate entity" and plaintiff's burden is to adduce facts under the *Hargrave* factors that show, by clear evidence, that the entity over which the court lacks personal jurisdiction dictated policy to and, in

---

[17] Unlike here, the alter ego imputation scenario typically addressed by the courts concerns a subsidiary with presence in the forum sufficient to confer personal jurisdiction over it and a foreign parent that lacks sufficient presence in the forum for personal jurisdiction to exist over it, absent imputation of the subsidiary's forum contacts to the parent.  Here, the situation is the reverse because the parent, FMOG, voluntarily submitted to the jurisdiction of the forum, while the subsidiary, PXP Gulf Coast, lacks sufficient minimum contacts with the forum to support the exercise of personal jurisdiction over it.

fact, "controlled" the entity over which personal jurisdiction in the forum exists).  Accordingly, here, with respect to the *Hargrave* control factors (factors six and seven), Shell's requests must be directed to information that would show an exercise of control by PXP Gulf Coast (the entity that lacks presence in the forum) over FMOG (the entity with presence in the forum) to such an extraordinary degree that FMOG's voluntary submission to the jurisdiction of the forum is properly imputed to PXP Gulf Coast.  *See Adm'rs of Tulane*, 450 Fed. App'x. at 325.  Contrary to these standards and as explained in more detail below, Shell here fails to seek information within the confines of the *Hargrave* factors, instead often turning the *Hargrave* control test on its head and routinely trying to append factors relevant to the determination of alter ego liability, rather than alter ego jurisdiction, to the *Hargrave* test.

In this connection, a review of the discovery responses by FMOG and PXP Gulf Coast establishes that they fulfilled their obligation to provide Shell with all information necessary to address each of the seven *Hargrave* factors.  First, FMOG and PXP Gulf Coast have provided information to show that the first *Hargrave* factor cannot be met here because PXP Gulf Coast holds no ownership interest in FMOG.  *See* Rec. Doc. 88-4 at Responses to Request for Admission ("RFA") Nos. 2 & 3; Rec. Doc. 88-5 at same.  Second, they have responded to Shell's various requests related to whether they share a headquarters affirmatively, providing Shell with the information it needs to assert its jurisdictional argument with respect to the second factor.  *See id.* at Response to RFA No. 4 and Response to Interrogatory No. 3.  Third, they have provided Shell with documents that reflect that they share some common officers, providing Shell with the information it needs to assert satisfaction of the third factor.  Fourth, they have produced their separate certificates of formation, limited liability company agreements and the like, showing their

observation of corporate formalities, providing Shell with the information relevant to the fourth factor.  Fifth, while FMOG and PXP Gulf Coast have acknowledged that they use the same accounting systems, Excalibur, Quorum, SAP & Hyperion Enterprise and HFM, *see id.* at Response to Request for Production No. 6, they have denied use of the same accounting systems to the extent that their "accounting is performed separately and separate books and records are maintained for each entity."  *See, e.g., id.* at Responses to RFA Nos. 18-21.  Sixth and seventh, they have separately responded to nearly 250 Requests for Admission and have produced documents, including each entity's tax returns, that collectively provide Shell with all the information necessary to show whether PXP Gulf Coast, from outside the forum, dictates general policy to and controls the daily operations of FMOG to a degree of domination that makes fusing the two for jurisdictional purposes appropriate.  *Hargrave*, 710 F.2d at 1160.

Despite the applicability of only the *Hargrave* factors to evaluate whether FMOG's submission to the jurisdiction of the forum can be imputed to PXP Gulf Coast, Shell seeks to compel discovery from FMOG and PXP Gulf Coast that has no relationship to any of the *Hargrove* factors and instead relates specifically to certain of the factors in the eighteen-factor *Green* test or to veil-piercing factors used at the liability stage.[18]

---

[18] *See, e.g.,* Rec. Doc. 88-1 at 6 (asserting entitlement to conduct jurisdictional discovery with respect to the factors set forth in *Huard v. Shreveport Pirates, Inc.*, 147 F.3d 406 (5th Cir. 1998) and *United States v. Jon-T Chem, Inc.*, 768 F.2d 686 (5th Cir. 1985)).  In *Huard*, the Fifth Circuit addressed and affirmed a district court's refusal to impose "personal liability" on an individual "for the obligations of his solely-owned corporation" under a veil-piercing theory.  147 F.3d at 407.  Similarly, in *Jon-T*, the Fifth Circuit applied federal law to address a parent corporation's alleged liability because its subsidiary was its alleged "alter ego."  768 F.2d at 696.  Neither *Huard* nor *Jon-T* examined personal jurisdiction or the factors relevant to imputation of jurisdictional contacts between related corporate entities.  To the contrary, those cases concerned only factors relevant to the determination of alter ego liability.

A.     **Shell's Requests for Information Related to Employees and Whether Their Salaries and Wages Were Paid for by One Entity On the Other's Behalf Have Nothing to Do with Any of the *Hargrave* Factors and Should Be Disallowed.**

Shell initially contends that FMOG and PXP Gulf Coast improperly objected to providing lists of employees and documents related to their salaries, wages or other expenses if "paid for" by one entity on the other's behalf.  *See* Rec. Doc. 88-1 at 8-9, 14-16.  Shell insists that it needs this employee information to show control over daily operations and whether the two corporations maintain separate accounting systems[19] and observe corporate formalities.[20]   *Id.*    In this connection, the example Shell provides in an effort to show why it needs employee salary information illustrates Shell's fundamental misunderstanding of the *Hargrave* test because Shell asserts that it seeks the information to show that PXP Gulf Coast's daily operations "are under FMOG's control."  Rec. Doc. 88-1 at 16.  Under the *Hargrave* test, however, Shell needs to show the opposite, that PXP Gulf Coast controls FMOG's daily operations.  Regardless, despite Shell's effort to make employee information fit within the *Hargrave* factors, it does not.  Indeed, rather than falling within any of the *Hargrave* factors, Shell's various requests for employee information

---

[19] Because FMOG and PXP Gulf Coast have already responded to multiple requests by Shell related to their accounting systems and practices, Shell's request for more information on this subject is unreasonably cumulative and duplicative in violation of Fed. R. Civ. P. 26(b)(2)(C)(i).

[20] Throughout its brief, Shell tries to add factors to the seven-factor *Hargrave* test that do not exist, including an alleged "Factor 8," which Shell contends is "the method and degree of financing of the subsidiary by the parent," and an alleged "Factor 9," which Shell contends is "the extent to which contracts between parent and subsidiary favor one over the other."  *See* Rec. Doc. 88-1 at 17.  There is no authority, however, to support the existence of any factors beyond the seven factors set forth in *Hagrave*, as reiterated in *Dickson*, for purposes of the test that applies to determine jurisdictional imputation under an alter ego theory.

identically track a number of the *Green* single business enterprise factors,[21] which are plainly off limits here. *See Melson*, at *11-12 (holding that the *Green* factors do not apply to determine imputation of jurisdictional contacts in federal question jurisdiction cases). Because Shell's requests for lists of employees and employee salary information fall outside the *Hargrave* factors, Shell seeks discovery that is irrelevant to the jurisdictional inquiry, and FMOG's and PXP Gulf Coast's objections were proper and should be upheld.

   **B.   Shell's Requests for Information Related to Monetary Distributions, Transfers of Funds, Financing and Expenses, Liabilities or Losses Paid for by One Entity on the Other's Behalf Fall Outside the *Hargrave* Factors and Should Be Denied.**

   Besides Shell's generalizations with respect to its requests for information related to monetary distributions, transfers of funds, financing, and expenses, liabilities or losses paid for by one entity on the other's behalf falling within the observation of corporate formalities *Hargrave* factor and the control over daily operations *Hargrave* factor, Shell argues that this area of inquiry is "highly relevant" to the purported eighth *Hargrave* factor, which Shell asserts is "the method and degree of financing of the subsidiary by the parent." Rec. Doc. 88-1 at 12. There is, however, no *Hargrave* "Factor 8,"[22] and Shell's requests in this regard again improperly relate directly to

---

   [21] *See Green*, 577 So.2d at 257-258 (listing as factors "corporation paying the salaries and other expenses or losses of another corporation," "common employees," and "services rendered by the employees of one corporation on behalf of another corporation").

   [22] *See Dickson*, 179 F.3d at 339 (listing the seven factors); *Melson*, at *13-14 ("the Fifth Circuit set forth seven factors to be considered in determining whether a parent corporation can be held amenable to personal jurisdiction because of its subsidiary's contacts with the forum state . . .").

{N3660866.2}

certain of the *Green* single business enterprise factors,[23] rather than to any of the *Hargrave* factors. Again, Shell's effort to obtain discovery beyond the scope of the *Hargrave* factors should be denied.

        **C.**    **Shell's Requests for Information Related to FMOG's and PXP Gulf Coast's Capitalization Bear No Relationship to Any of the *Hargrave* Factors, Thus Exceeding the Appropriate Scope of Jurisdictional Discovery.**

Shell next asserts its entitlement to obtain discovery related to capitalization, pointing to various factors that apply to the determine liability under a veil-piercing theory, as opposed to the limited test that applies to determine whether jurisdictional imputation is appropriate, as well as to "Factor 8" and "Factor 9" of the *Hargrave* test, which, as previously set forth, do not exist. *Hargrave*'s jurisdictional test nowhere references capitalization as relevant to the inquiry regarding whether imputation is appropriate under an alter ego theory for jurisdictional purposes.[24] To the contrary, like Shell's other lines of inquiry, Shell tracked yet another inapplicable *Green* single business enterprise factor[25] in asking FMOG and PXP Gulf Coast requests regarding

---

[23] *See Green*, 577 So.2d at 257-58 (listing as factors "corporation financing another corporation," "corporation paying . . . other expenses or losses of another corporation," "undocumented transfers of funds between corporations," and "unclear allocation of profits and losses between corporations").

[24] In fact, in *Hargrave*, the Fifth Circuit addressed both imputation under an alter ego theory for jurisdictional purposes and, separately, alter ego liability. After it examined and set forth the jurisdictional seven-factor test, in the second part of the *Hargrave* decision, the Fifth Circuit addressed the question of alter ego liability, and, in its review of alter ego liability under Pennsylvania law, the Fifth Circuit explicitly referenced "undercapitalization" as a factor. 710 F.2d at 1162-65. Accordingly, the Fifth Circuit's recognition of undercapitalization as a liability factor establishes that the omission of undercapitalization in the jurisdictional test was deliberate and not an oversight.

[25] *See Green*, 577 So.2d at 257 (listing as a factor "inadequate capitalization ('thin corporation')").

capitalization.  Because information related to capitalization has no relevance to the *Hargrave* test, Shell's request to compel capitalization information from FMOG and PXP Gulf Coast should be denied.

      **D.**    **FMOG and PXP Gulf Coast Have Produced Sufficient Information and Documents Related to Their Daily Operations, and Shell's Request for Additional Information on this Subject Matter Amounts to an Improper Fishing Expedition.**

Finally, Shell sets forth a laundry list of documents – including "business plans, tax plans, budgets (quarterly and annual), top 10 clients,[26] insurance policies, and in general, ongoing business" activity documents – that it asserts is relevant to the determination of "'whether the parent exercises complete authority over daily operations.'"  Rec. Doc. 88-1 at 19.  Here, however, to establish that imputation is proper, Shell must show the opposite because it must show that PXP Gulf Coast exercises "complete authority" over FMOG's daily operations.  Shell nevertheless continues to turn the test on its head, overlooking the fundamental flaw in its asserted rationale for seeking expansive additional corporate business and financial information from FMOG and PXP Gulf Coast.  When viewed in the context of the extensive information that FMOG and PXP Gulf Coast have already provided to Shell and given that Shell's rationale for seeking this additional information is erroneous, Shell's requests for additional "daily operations" documentation, in the end, amounts to an improper fishing expedition that should not be countenanced, particularly in the context of limited nature of and purpose for jurisdictional discovery.[27]

---

[26] FMOG and PXP Gulf Coast note that they each provided information responsive to Shell's request for the identity of their top clients.  *See* Rec. Doc. 88-4 at Response to Request for Production No. 24; Rec. Doc. 88-5 at same.

[27] *See, e.g., 721 Bourbon House, Inc. v. House of Auth, LLC*, 140 F. Supp. 3d 586, 600 (E.D. La. 2015) (denying jurisdictional discovery because the information sought was irrelevant

**Conclusion**

For all the reasons set forth above, Shell's Motion to Compel additional information from FMOG and PXP Gulf Coast should be denied.  FMOG and PXP Gulf Coast have properly responded to Shell's jurisdictional discovery requests by providing information relevant to the Fifth Circuit's seven-factor *Hargrave* test, and any information beyond that falls outside the limited jurisdictional discovery that the Court granted Shell leave to conduct.

Respectfully submitted,

*/s/ Alida C. Hainkel*
CARL D. ROSENBLUM, T.A. (#02083)
ALIDA C. HAINKEL (#24114)
TYLER J. RENCH (#34049)
Jones Walker LLP
201 St. Charles Ave., Ste. 5100
New Orleans, Louisiana 70170
Telephone: (504) 582-8296
Facsimile: (504) 589-8296
Email:  crosenblum@joneswalker.com
Email:  ahainkel@joneswalker.com
Email:  trench@joneswalker.com

*Counsel for Defendants,*
*Freeport-McMoRan Oil & Gas LLC and*
*PXP Gulf Coast LLC*

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing was served on all counsel of record using the Court's CM/ECF system this 25th day of September, 2018.

*/s/ Alida C. Hainkel*

---

to establishing the existence of personal jurisdiction); *Phunware, Inc. v. Excelmind Grp. Ltd.*, 117 F. Supp. 3d 613, 632 (D. Del. 2015) (a request for jurisdictional discovery without adequate supporting allegations of fact should be denied as an unauthorized fishing expedition).

{N3660866.2}